# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-20104

United States Court of Appeals
Fifth Circuit

**FILED**

July 28, 2017

Lyle W. Cayce
Clerk

URETEK (USA), INCORPORATED,

Plaintiff–Appellant,

v.

CONTINENTAL CASUALTY COMPANY,

Defendant–Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:13-CV-3746

Before OWEN, GRAVES, and HIGGINSON, Circuit Judges.

PER CURIAM:*

In this insurance coverage dispute, Uretek (USA), Inc. (Uretek) sought a defense from Continental Casualty Co. (Continental), its commercial general liability insurer, in connection with a counterclaim filed by a rival. Continental declined to defend the suit and Uretek sued, seeking a declaratory judgment, damages for breach of contract, and punitive damages. The district court entered summary judgment for Continental, concluding that none of

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-20104

allegations in the counterclaim came within the policy's "personal and advertising injury" coverage. For the reasons that follow, we reverse and remand for further proceedings.

**I**

Uretek is a roadway maintenance and repair company insured by a commercial general liability policy issued by Continental. The policy includes provisions that required Continental to defend Uretek against suits seeking damages for "personal and advertising injury."

The policy provides that personal and advertising injury is "injury . . . arising out of one or more" of seven specified "offenses." Only two are potentially relevant here: "Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services" and "[t]he use of another's advertising idea in [Uretek's] 'advertisement.'" An exclusion in the policy provides that there is no coverage if the injury is caused "with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury,'" or where it arises from the publication of material "with knowledge of its falsity."

Uretek sued its competitor, Applied Polymerics, Inc. (Applied), for patent infringement. Applied asserted a counterclaim against Uretek, and Uretek demanded that Continental defend it against Applied's claims in that counterclaim.

The parties agree that Texas state law applies to this coverage dispute. In Texas, the scope of an insurer's duty to defend an insured is determined by the "eight-corners rule."[1] "Under that rule, courts look to the facts alleged

---

[1] *Test Masters Educ. Servs., Inc. v. State Farm Lloyds*, 791 F.3d 561, 564 (5th Cir. 2015).

2

within the four corners of the . . . pleadings, measure them against the language within the four corners of the insurance policy, and determine if the facts alleged present a matter that could potentially be covered by the insurance policy."[2]

It is the underlying factual allegations of the complaint—not its legal theories—that guide the inquiry,[3] and those allegations are considered "without regard to their truth or falsity."[4] Courts give factual allegations in the pleadings "a liberal interpretation"[5] and "may draw inferences" from the pleadings in favor of coverage.[6] At the same time, they must not "read facts into the pleadings," "look outside the pleadings," or "'imagine factual scenarios which might trigger coverage.'"[7] "[T]he general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy."[8] If a complaint "includes even one covered claim, the insurer must defend the entire suit."[9] "Whether an insurer owes its insured a duty to defend is a question of law,"[10] and the district court's determination of state law is subject to de novo review.[11]

---

[2] *Id.* (quoting *Ewing Constr. Co. v. Amerisure Ins. Co.,* 420 S.W.3d 30, 33 (Tex. 2014)).

[3] *Id.*

[4] *Id.* (quoting *Ewing*, 420 S.W.3d at 33).

[5] *Nat'l Union Fire Ins. Co. of Pittsburgh v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) (per curiam).

[6] *Gore Design Completions v. Hartford Fire Ins. Co.*, 538 F.3d 365, 369 (5th Cir. 2008) (quoting *Gen. Star. Indem. Co. v. Gulf Coast Marine Assocs.*, 252 S.W.2d 450, 456 (Tex. App.—Houston [14th Dist.] 2008, pet. denied)).

[7] *St. Paul Ins. Co. v. Tex. Dep't of Transp.*, 999 S.W.2d 881, 885 (Tex. App.—Austin 1999, pet. denied) (quoting *Merchants Fast Motor Lines*, 939 S.W.2d at 142).

[8] *Id.* at 884 (quoting *Merchants Fast Motor Lines*, 939 S.W.2d at 141).

[9] *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 380 (Tex. 2012).

[10] *Koenig v. First Am. Title Ins. Co.*, 209 S.W.3d 870, 873 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

[11] *Anco Insulations, Inc. v. Nat'l Union Fire Ins. Co.*, 787 F.3d 276, 281 (5th Cir. 2015) (per curiam).

No. 15-20104

Any ambiguities in a policy are resolved in favor of the insured. Texas follows the well-established rule that "[t]erms in insurance policies that are subject to more than one reasonable construction are interpreted in favor of coverage."[12]

Continental's duty to defend extended to suits against Uretek seeking damages for an "injury . . . arising out of . . . [the] [o]ral or written publication, in any manner, of material that . . . disparages a person's or organization's goods, products or services." The term *disparage* is not a technical or industry-specific term, and so we are guided by its "plain, ordinary, and generally accepted meaning"; a suit need not incorporate each "element[] of the business tort of disparagement" to be covered by the policy.[13] So defined, to disparage is "'to lower in rank or reputation; degrade' or 'speak slightingly about.'"[14]

Uretek maintains that the injuries Applied asserted in its counterclaim arise out of disparagement and therefore come within Uretek's policy's coverage for suits alleging personal or advertising injury. Uretek argues that Applied alleged that Uretek made statements to Allied's customers or potential customers that Allied could not undertake to work on various projects without infringing on Uretek's patent and that carried the necessary implication that Allied had no right to undertake this work.

The district court reasoned that "[i]f Applied had alleged that Uretek told customers that Applied had infringed the '831 Patent, the Court would agree that the alleged communication constituted 'disparage[ment]' under the Policy and triggered CCC's duty to defend." The district court concluded, however,

---

[12] *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 133 (Tex. 2010).

[13] *KLN Steel Prods. Co. v. CNA Ins. Cos.*, 278 S.W.3d 429, 438 (Tex. App.—San Antonio 2008, pet. denied).

[14] *Id.* (emphasis removed) (quoting MERRIAM–WEBSTER'S COLLEGIATE DICTIONARY 360 (11th ed. 2003)).

that Allied had not alleged that Uretek told customers that Applied had infringed the '831 patent. With great respect, we disagree with the district court and conclude that Allied's counterclaim did include such allegations.

In Allied's counterclaim, in paragraph 6 under the heading "Background," Applied asserted that Uretek had

> engaged in a pattern or practice of misrepresenting the scope of the '831 patent in a concerted effort to intimidate and coerce [Uretek's] competitors into refraining from proper and lawful bidding on, and to intimidate contracting bodies in the selection and award of bids for, construction projects for which the scope of work does not involve processes covered by the '831 Patent.

Uretek did so, Applied alleged, "despite having information and knowledge that [the] '831 patent [was] not valid or enforceable.

Then, more specifically, Applied's counterclaim recounts that it had entered into a contract with the Virginia Department of Transportation (VDOT) to perform work on Interstate 664. In paragraph 14 of Count I, Applied alleged that Uretek "falsely misrepresented to general contractors, VDOT, and other roadway-owning government authorities that the VDOT contract for I-664 . . . and/or other contracts let for bid are covered by the '831 patent." This is an allegation that Uretek told VDOT, who was Allied's customer, and others, that Allied had infringed the '831 patent with regard to the contract between Allied and VDOT for work on Interstate 664.

Allied also asserted that these misrepresentations by Uretek "deceived or had a tendency to deceive a substantial segment of Applied's roadway-owning government authority customers, general contractor customers, and potential customers" and that Allied received fewer contracts for pavement lifting work. The second count in Allied's counterclaim against Uretek alleged

violations of the Sherman Act,[15] and it made reference to the VDOT contract. Uretek, the counterclaim alleged, inhibited competition by representing to government agencies and others that certain pavement lifting work—including work performed under the VDOT contract—fell within the scope of Uretek's '831 patent. The third count of Applied's counterclaim alleged a violation of North Carolina unfair competition law.[16] This count alleged that Applied was injured by Uretek's "illegal and anti-competitive acts."

A statement to a competitor's customer that the competitor is undertaking work that it has no legal right to undertake disparages that competitor and the services it offers by clear implication.[17] Resolving all reasonable disputes about the term *disparage* in favor of the insured and interpreting the complaint liberally, as we must, we conclude that the term is sufficiently broad to include Applied's allegations. It follows that the suit against Uretek alleged a "personal and advertising injury" and thus fell within the scope of Continental's duty to defend.

Continental's reliance on *KLN Steel Products Co. v. CNA Insurance Cos.*[18] on this point is misplaced. In *KLN Steel*, KLN was sued by a competitor for manipulating the bidding process to supply beds to a Navy training facility.[19] The factual allegations, as relevant here, were that KLN falsely "overstated its status as the designer and developer of the . . . bed" in

---

[15] *See* 15 U.S.C. § 2.

[16] *See* N.C. GEN. STAT. § 75-1.1.

[17] *See Amerisure Ins. Co. v. Laserage Tech. Corp.*, 2 F. Supp. 2d 296, 304 (W.D.N.Y. 1998) (concluding "wrongfully asserting that a competitor's product infringes patents clearly defames the competitor and disparages his product"); *Atl. Mut. Ins. Co. v. J. Lamb, Inc.*, 123 Cal. Rptr 2d 256, 269 (Cal. Ct. App. 2002) (finding allegations of patent infringement "clearly allege a disparagement of both [the competitor] as well as its products"); *see also Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 326 P.3d 253, 263-64 (Cal. 2014) (finding duty to defend when the underlying suit alleges statements that "specifically refer to and derogate a competitor's product or business by clear implication").

[18] 278 S.W.3d 429 (Tex. App.—San Antonio 2008, pet. denied).

[19] *Id.* at 433-34.

conversations with contracting officers.[20]  KLN argued that a "liberal reading" of those allegations is that "KLN belittled or disparaged [its competitor's] beds by representing that [the competitor's] beds were not original designs."[21]  A Texas court of appeals concluded KLN's insurer had no duty to defend the suit under a policy similar to the one at issue here because "the complaint does not allege that KLN disparaged or published any negative remarks *about the* [*competitor's*] *bed or* [*the competitor*]."[22]

*KLN Steel* is distinguishable from the present case.  Unlike the allegations at issue in *KLN Steel*, at least one of Uretek's alleged misrepresentations was directed at a particular potential customer in reference to a particular project that a competitor was undertaking.  It thus impugned a particular competitor and its services by necessary implication. The statement imputed to KLN, on the other hand, lacks that degree of specificity; the suit claimed that KLN had "overstated its status as the designer and developer of the . . . bed" in discussions with the contracting authority.[23] In addition, the differing nature and magnitude of the statements alleged— one asserting it was the only company legally entitled to conduct certain work, the other merely claiming that it was the first to develop a certain product— argues against the mechanical application of *KLN Steel* here.  The holding of that case is simply not broad enough to determine the result in ours.

Finally, Continental urges us to affirm the district court on the alternate basis that its policies "limit disparagement coverage to liability for 'injury' arising out of a covered disparagement offense," and the suit against Uretek, it claims, alleged no such injury.  To the extent that Continental assumes that

[20] *Id*. at 439.
[21] *Id.* at 438.
[22] *Id*. at 439.
[23] *Id*. at 433-34.

7

the underlying suit must meet the pleading requirements for the tort of business disparagement, it is mistaken. As we have noted above, the term *disparage* in the policy must be interpreted in accordance with its ordinary meaning and not understood as a reference to a particular cause of action.[24] The suit's allegations that "[Uretek's] deceptions . . . influenced decisions to have work performed and award contracts that Applied would have been awarded but for [Uretek's] false representations" are adequate to meet the requirement that the suit allege an "injury" arising from "disparagement."

## II

Continental contends that even if Uretek establishes that the underlying suit falls within the policy's "personal and advertising injury" coverage, two of the policy's exclusions apply. The first exclusion at issue precludes coverage if an injury is caused "with the knowledge that the act would violate the rights of another and would inflict personal and advertising injury"; the second precludes coverage if the personal or advertising injury in question arises from the oral or written publication of material "with knowledge of its falsity."

Under Texas law, the insurer bears the burden of proving the applicability of any policy exclusions.[25] "Exclusions are narrowly construed, and all reasonable inferences must be drawn in the insured's favor."[26] To prevail, the insurer generally must demonstrate that all of the claims against the insured "allege[] facts that exclude coverage" under the policy.[27] When at

---

[24] *See id.* at 438.

[25] *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 553 (5th Cir. 2004).

[26] *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 370 (5th Cir. 2008) (citing *Gen. Star Indem. Co. v. Gulf Coast Marine Assocs., Inc.*, 252 S.W.3d 450, 458-59 (Tex. App.—Houston [14th Dist.] 2008, pet. denied)).

[27] *Burlington Ins. Co. v. Superior Nationwide Logistics, Ltd.*, 783 F. Supp. 2d 958, 965 (S.D. Tex. 2010) (citing *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 82–83 (Tex. 1997) (per curiam)), *aff'd*, 427 F. App'x 299 (5th Cir. 2011) (per curiam).

least one cause of action falls within the policy coverage and outside the exclusions, the insurer "must defend the entire suit."[28]

On the facts of this case, we conclude that neither exclusion applies because the complaint alleged both intentional and merely negligent conduct. While it is certainly true that allegations of intentional conduct figure prominently in Applied's complaint, the complaint also alleges that Uretek merely "knew or should have known" that certain representations about the scope of its patent were false. The allegations concerning the I-664 contract that Applied was performing for VDOT illustrate this point. The complaint alleges that Uretek "had [an] opportunity" to inspect the contract terms and the work being performed on the VDOT contract and therefore "knew *or should have known* that the VDOT Contract and the work being performed by Applied did not infringe any of the claims of [Uretek's] [p]atent." It is thus clear that Applied could establish Uretek's liability under the Lanham Act—which does not require intentional conduct—by showing that Uretek made false statements about the I-664 project negligently or recklessly.[29] Because Applied could prevail under the factual allegations of the complaint by proving even an unintentional misrepresentation by Uretek, this case falls outside the policy's exclusions for knowing violation of another's rights and for statements made with knowledge of their falsity.

---

[28] *Am. Home Assur. Co. v. United Space Alliance, LLC*, 378 F.3d 482, 488 (5th Cir. 2004) (quoting *Stumph v. Dallas Fire Ins. Co.*, 34 S.W.3d 722, 728 (Tex. App.—Austin 2000, no pet.)).

[29] *See Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000) (listing of elements of Lanham Act claim without any reference to defendant's intent); 5 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 27:24 (4th ed.) (same).

No. 15-20104

\*    \*    \*

For the foregoing reasons, the district court's entry of summary judgment for Continental is REVERSED and the case is REMANDED for further proceedings.