COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

THE BURLINGTON NORTHERN AND           §
SANTA FE RAILWAY COMPANY
F/K/A/ THE ATCHISON, TOPEKA AND       §           No. 08-06-00022-CV
SANTA FE RAILWAY COMPANY,
                                      §           Appeal from the
                Appellant,
                                      §           41st Judicial District Court
v.
                                      §           of El Paso County, Texas
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,            §           (TC# 2000-1286)

                Appellee.             §


## **O P I N I O N**

This appeal arises from a take-nothing summary judgment granted in favor of National

Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") on claims that

National Union breached its duty to defend and indemnify the Burlington Northern and Santa Fe

Railway Company ("BNSF") for damages related to a 1995 collision at one of BNSF's railway

crossings.   In this Court's original opinion, we affirmed the trial court's summary judgment on

the basis that National Union established, as a matter of law, that BNSF was not entitled to

coverage.   *Burlington N. & Santa Fe Ry. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 334

S.W.3d 235, 245 (Tex.App.--El Paso 2009, pet. granted), *rev'd*, 334 S.W.3d 217 (Tex. 2011)(per

curiam).   The Texas Supreme Court granted BNSF's petition for review and reversed on the

question of National Union's duty to indemnify.   *Burlington N. & Santa Fe Ry. Co.,* 334 S.W.3d

at 220.   In accordance with the Supreme Court's opinion, we now reconsider the question of

National Union's duty to indemnify in light of the extrinsic evidence presented by the parties.[1]

*Burlington N. & Santa Fe Ry. Co.,* 334 S.W.3d at 220.

As set out in the Supreme Court's opinion, in February of 1994, BNSF entered into a three-year contract with SSI Mobley for vegetation control along the railroad's right-of-ways in Texas. As part of the contract, SSI Mobley agreed to purchase a comprehensive general liability policy and a contractual liability policy insuring itself for one million dollars per occurrence, or three million dollars aggregate.[2] SSI Mobley also agreed that BNSF would be named as an "additional insured" on the policies, with coverage to extend to incidents occurring within fifty feet of a railroad track. SSI Mobley purchased the required insurance from National Union.

BNSF filed this lawsuit against National Union following the insurance company's decision to deny the railroad's claims for defense and indemnity for liability arising out of a railroad crossing accident near Shallowater, Texas. On August 25, 1995, two people were killed

---

[1] In its Supplemental Brief on the Issue of Extrinsic Evidence, BNSF urges this Court to also reconsider our prior holding that National Union had no duty to defend. National Union adamantly opposes BNSF's request noting that the Supreme Court did not address this issue. *See Burlington N. & Santa Fe Ry. Co*., 334 S.W.3d at 220. As noted above, the Supreme Court determined that we erred by not considering extrinsic evidence relative to National Union's duty to indemnify. This Court ordered the parties to submit supplemental briefs on the issue of National Union's duty to defend, if any. *See Garrett v. State,* 749 S.W.2d 784, 786 (Tex.Crim.App. 1986), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex.Crim.App. 1997)(holding that "[o]nce jurisdiction of an appellate court is invoked, exercise of its reviewing functions is limited only by its own discretion or a valid restrictive statute."). The parties provided supplemental briefing in accordance with the Court's order. We conclude that the Supreme Court's holding was sufficiently ambiguous, particularly in light of BNSF's arguments to the Supreme Court that we erred in our application of the "eight-corners rule," such that we should reconsider the duty to defend issue in addition to the indemnity issue.

[2] In relevant part, the contract's "Insurance Provision" provided as follows:

Contractor shall, at its sole cost and expense, provide:

.          .          .

(b)        Comprehensive General Liability and Contractual Liability Policy insuring the Contractor for one million each occurrence/three million dollars aggregate ($1,000,000/$3,000,000). The Company will be named as an additional insured. The insurance must provide for coverage of incidents occurring within fifty (50) feet of a railroad track, and any provision to the contrary in the insurance policy must be specifically deleted and the

and a third was injured when a BNSF train collided with an automobile. The decedents' families ("Lara" and "Rosales") sued the railroad alleging, in part, that the collision was caused by the railroad's failure to properly maintain the vegetation at the crossing. BNSF settled one of the cases, and the second proceeded to a multi-million dollar jury verdict.

BNSF and National Union filed competing summary judgment motions in early 2002. The trial court denied National Union's motion on May 30, 2002. On June 5, 2003, the trial court granted partial summary judgment in the railroad's favor on the insurance company's duty to defend and BNSF's indemnity claim. The order provided that damages would be determined at a later date.

On July 8, 2003, National Union filed a motion to reconsider the partial summary judgment order. There is no record that the trial court ruled on this motion expressly. On June 17, 2005, BNSF filed a motion for entry of final summary judgment on the damages issues remaining from the court's June 2003 partial summary judgment. On October 5, 2005 National Union filed a second motion for summary judgment, raising both traditional and no-evidence grounds. The trial court entered a final, take-nothing judgment in National Union's favor on December 27, 2005. The court withdrew its June 5, 2003, partial summary judgment order and denied the railroad's motion for entry of summary judgment on the damages issue. The trial court also granted National Union's October 5 motion for summary judgment "in all things." BNSF filed its notice of appeal on January 26, 2006. This Court held that because the language in the plaintiff's pleadings referenced SSI Mobley's actions as having happened in the past, the policy's "completed operations" exclusion precluded a duty to defend. *Burlington N. & Santa*

---

insurance certificate must so state.

-3-

*Fe Ry. Co.,* 334 S.W.3d at 244; *Burlington N. & Santa Fe. Ry. Co.,* 334 S.W.3d at 220.  We also held that because BNSF's arguments relative to the duty to indemnify were based entirely on its duty to defend arguments, the trial court did not err in granting summary judgment regarding indemnity.  *Burlington N. & Santa Fe Ry. Co.*, 334 S.W.3d at 245.  The Supreme Court reversed, holding that we erred by not considering all of the evidence presented by the parties in determining whether National Union had a duty to indemnify.  *Burlington N. & Santa Fe. Ry. Co.,* 334 S.W.3d at 220.

When both sides move for summary judgment, and the trial court grants one motion and denies the other, the reviewing court considers both sides' summary judgment evidence and determines all issues presented.  *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).  The reviewing court must consider all the grounds presented in both motions, and render the judgment the trial court should have rendered.  *Id.*  The cross motions in this case presented both traditional and no-evidence grounds for summary judgment.  *See* TEX.R.CIV.P. 166a(c) and 166a(i).  However, given the procedural posture of the case to date, in this opinion we reconsider only the traditional and no-evidence motions for summary judgment filed by National Union on the issue of whether it owed a duty to defend and indemnify BNSF.

An appellate court reviews summary judgment *de novo*.  *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

We first reexamine National Union's traditional motion under Rule 166a(c).  The standards for reviewing traditional summary judgments are well established.  In a traditional summary judgment proceeding, the standard of review on appeal asks whether the successful movant carried the burden to show that there is no genuine issue of material fact, and that the

judgment was properly granted as a matter of law. *See* TEX.R.CIV.P.166a(c); *Fertic v. Spencer*, 247 S.W.3d 242, 248 (Tex.App.--El Paso 2007, pet. denied). Thus, the question before the reviewing court is limited to whether the summary judgment proof establishes as a matter of law that there is no genuine issue of material fact as to one or more elements of the underlying claim. *See Fertic*, 247 S.W.3d at 248. To resolve this question, the reviewing court will take all evidence favorable to the non-movant as true; and all reasonable inferences, including any doubts, must be resolved in the non-movant's favor. *Id.*, *citing Nixon v. Mr. Property Mgmt. Co., Inc.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

BNSF contends the trial court erred in granting summary judgment on its duty to defend claim by misapplying the "eight corners rule." National Union responds by arguing that the trial court was correct in concluding that the petitions in the underlying personal injury lawsuits fail to allege any fact that could potentially place the claims within coverage provisions.

Whether a duty to defend exists is a question of law, reviewed *de novo*. *KLN Steel Prod. Co., Ltd. v. CNA Ins. Cos.*, 278 S.W.3d 429, 434 (Tex.App.--San Antonio 2008, pet. denied). The insured bears the initial burden to establish that its claim falls within the scope of coverage provided by the policy. *CNA Ins. Cos.*, 278 S.W.3d at 434. Should the insured establish a right to coverage, the burden then shifts to the insurer to demonstrate that the claim is subject to a policy exclusion. *Venture Encoding Serv., Inc. v. Atl. Mut. Ins. Co.*, 107 S.W.3d 729, 733 (Tex.App.--Fort Worth 2003, pet. denied). If the insurer is able to establish that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within the terms of the policy. *Venture Encoding Serv., Inc.*, 107 S.W.3d at 733.

Generally, the duty to defend is dependent on the type and scope of coverage provided by

the policy agreement.  *See King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002).   An insurer's duty to defend is determined according to the "eight corners," or "complaint allegations" rule.  *See id*. at 187; *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex. 1997).   The insurer's duty to defend is determined entirely by the allegations in the pleadings and the language of the insurance policy.  *King*, 85 S.W.3d at 187.   All that is needed to invoke the duty are factual allegations that support a claim potentially covered by the policy. *See GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 310 (Tex. 2006). Any doubt that the facts alleged give rise to the duty are resolved in favor of the insured.  *See National Union Fire Ins. Co. of Pittsburgh, PA v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).   Facts outside the pleadings, regardless of how easily they can be found or validated, are not ordinarily considered.  *GuideOne Elite Ins. Co.*, 197 S.W.3d at 308; *see also Argonaut Sw. Ins. Co. v. Maupin*, 500 S.W.2d 633, 636 (Tex. 1973)("The duty to defend does not depend on what the facts are, or what might be determined finally by the trier of the facts.   It depends only on what the facts are alleged to be.").

National Union's summary judgment argument was two-fold:   first, that BNSF was barred from coverage because it could not qualify as an additional insured according to the terms of the policy; second, to the extent BNSF was an additional insured, National Union argued that one or more policy exclusions excused it from providing a defense.   In its own motion, BNSF argued it was entitled to coverage as an additional insured by the terms of the policy.   The railroad further argued that the petitions in the underlying case established its right to a defense, and that the policy exclusions are not applicable or not established as a matter of law.

Once again, we must determine whether BNSF qualifies as an "additional insured" under

the terms of the CGL policy.   The policy provides coverage for bodily injury and property damage, and obligates National Union to defend any suit seeking damages for such injuries. Section II of the CGL policy defines "WHO IS AN INSURED" as those individuals, partnerships, or organizations listed in the policy declaration.[2]   Who is an insured is amended by an "Additional Insured" endorsement page attached to the policy.   The endorsement states, "(Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of 'your work' for that insured by or for you."   The endorsement provides further:

> BLANKET - AS REQUIRED BY WRITTEN CONTRACT, BUT ONLY WITH RESPECT TO LIABILITIES ARISING OUT OF THEIR OPERATIONS PERFORMED BY OR FOR THE NAMED INSURED, BUT EXCLUDING ANY NEGLIGENT ACTS COMMITTED BY SUCH ADDITIONAL INSURED.

Whether BNSF can be considered an "additional insured" requires us to construe the meaning of these contract terms.   Insurance contracts are interpreted according to the general rules of contract construction.   *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).   The primary concern in interpreting a contract is to determine the true intent of the parties.   *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).   When a policy permits only one interpretation, we construe it as a matter of law and enforce it as written.   *Upshaw v. Trinity Cos.*, 842 S.W.2d 631, 633 (Tex. 1992).[3]   When the term to be construed is unambiguous, we will construe the language according to the plain meaning of the words.   *Archon Investments, Inc. v. Great Am. Lloyds Ins. Co.*, 174 S.W.3d 334,

---

[2] SSI Mobley is the "named insured" under the policy.

[3] Neither party argues that the "Who is insured provision" or the "additional insured" endorsement is ambiguous or creates an ambiguity in the meaning of the policy.

-7-

338 (Tex.App.--Houston [1st Dist.] 2005, pet. denied).

According to the plain meaning of the language used in the endorsement, BNSF is entitled to coverage for liability arising from bodily injury or property damage caused by SSI Mobley's operations, and is not covered for claims alleging the railroad's own negligence. Therefore, BNSF qualifies as an "additional insured" if the plaintiffs in the underlying lawsuits sought recovery based on SSI Mobley's negligence and not the railroad's. For this inquiry, we must apply the "eight corners rule," and compare the policy provisions as stated above, to the allegations in the underlying petitions. *See King*, 85 S.W.3d at 187.

When applying the eight-corners rule, a reviewing court interprets the allegations in the petition liberally, and resolves any doubts in favor of the duty to defend. *KLN Steel Prod. Co., Ltd.*, 278 S.W.3d at 435. The insured need only show that a reasonable reading of the allegations would allow evidence of a claim that is covered by the policy, not that the claim itself be clearly demonstrated by the language of the pleadings. *Id.* In addition, the reviewing court must read the underlying petitions in light of the insurance policy's provisions, and focus the analysis on the "origin of the damages rather than on the legal theories alleged." *Nat'l Union Fire Ins., Co.*, 939 S.W.2d at 141; *see also Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673, 676 (Tex.App.--Houston [14th Dist.] 1993), *writ denied*, 864 S.W.2d 491 (Tex. 1993), *cert denied*, 511 U.S. 1053, 114 S.Ct. 1613, 128 L.Ed.2d 340 (1994)("It is not the cause of action alleged which determines coverage but the *facts* giving rise to the alleged actionable conduct.")[Emphasis in orig.].

BNSF relies on the following passage from the Rosales's third amended and Lara's sixth amended petitions to establish the underlying suits fall within coverage under the policies:

4.      The Railroad has two (2) methods it uses to control vegetation.   One is mechanical weed control, that is using shredders on tractors to mow weeds.   The second method is chemical weed control.   Even though this duty is a non-delegable duty, the Railroad contracts out both methods of weed control.   The Railroad had a contract with SS Mobley Company to carry out chemical weed control.   SS Mobley failed to use reasonable care to carry out its chemical weed control, and because of its improper timing and application of chemical weed control, there was excessive vegetation at the crossing at the time of the collision, which proximately caused the collision.

As a preliminary matter, National Union attempts to demonstrate that BNSF failed to establish its right to coverage by referring to several pieces of extrinsic evidence.   We cannot consider such evidence under the eight-corners rule.   *See King*, 85 S.W.3d at 187.   The Texas Supreme Court has continually declined to create an exception to the eight-corners rule that would allow consideration of extrinsic evidence in determining whether an insurer owes a duty to defend.   *See Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009); *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 497 (Tex. 2008); *GuideOne Elite Ins. Co.*, 197 S.W.3d at 310-11.   Therefore, our analysis will focus exclusively on the language of the policy and the allegations in the petitions.

Relying on the additional insured endorsement, National Union argues it has no duty to defend BNSF because the Lara and Rosales petitions include allegations that BNSF was at fault for the collision.   The Texas Supreme Court rejected this argument in *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 665-66 (Tex. 2008).   The facts in *Evanston* are parallel to those presented here:   Atofina hired a contractor, Triple S, to perform maintenance at its oil refinery.   Atofina was an additional insured on Triple S's indemnity policy with Evanston Insurance Company.   A Triple S employee was killed while servicing equipment

at the refinery, and the employee's family sued Atofina along with Triple S.   Triple S was later

dismissed from the suit.   Atofina asserted its status as an additional insured and requested

coverage related to the remaining litigation.   Evanston denied the request, arguing that Atofina

was not an additional insured because the policy language did not cover an additional insured for

its own negligence.   *Evanston*, 256 S.W.3d at 663-64.   The additional insured endorsement at

issue in *Evanston* provided coverage for:

> A person or organization for whom [Triple S] [has] agreed to provide insurance as
> is afforded by this policy; but that person or organization is an insured only with
> respect to operations performed by [Triple S] or on [Triple S's] behalf, or
> facilities owned or used by [Triple S].

*Id*. at 664.

Atofina, much like BNSF, claimed it was covered by the endorsement because it was an

entity for whom Triple S had agreed to provide insurance.   *Id*.   Evanston, much like National

Union, countered by arguing that Atofina was not an additional insured because the endorsement

did not cover an additional insured for the additional insured's own negligence.   *Id*.

Although the focus of the *Evanston* decision was indemnity coverage, the Court reiterated

that the insurer must "determine its duty to defend solely from terms of the policy and the

pleadings of the third-party claimant."   *Id*. at 665 [Internal quotations omitted].   The Court then

rejected the fault-based interpretation of the additional insured endorsement.   *Id*. at 666.   In

determining the effect of the policy's limitation of coverage based on allegations that the

additional insured itself was negligent, the Court held "[t]he particular attribution of fault

between insured and additional insured does not change the outcome."   *Evanston*, 256 S.W.3d at

666.   The Court also noted that had the parties intended to insure Atofina only for vicarious

liability, such language was available. *Evanston*, 256 S.W.3d at 666.

In accordance with *Evanston*, we again conclude that BNSF qualifies as an additional insured under SSI Mobley's CGL policy. There is no dispute that the injuries at the heart of the underlying lawsuit constitute "bodily injuries" as defined by the policy. The Lara and Rosales families alleged, in part, that SSI Mobley did not carry out its chemical weed control with reasonable care and that SSI Mobley's negligence resulted in the overgrowth of vegetation which obstructed the view of the crossing and led to the collision. The fact that the petitions also contain factual allegations that BNSF was at fault for the collision – either because of its delegation of weed control to SSI Mobley or because of its failure to properly supervise and manage SSI Mobley's work – does not change the insurer's duty to defend the entire suit. *See Evanston*, 256 S.W.3d at 665-66; *Zurich Am. Ins. Co.*, 268 S.W.3d at 495-96.

Having determined BNSF established its right to coverage as an additional insured, we must next determine whether the "PRODUCTS- COMPLETED OPERATIONS HAZARD" exclusion negates National Union's duty to defend. The exclusion states, "[t]his insurance does not apply to 'bodily injury' or 'property damage' arising out of the 'products-completed operations hazard.'" The CGL defines "products-completed operations hazard" as follows:

> 11.a  'Products-completed operations hazard' includes all 'bodily injury' . . . occurring away from premises [SSI Mobley] [owns] or [rents] and arising out of '[SSI Mobley's] product' or '[SSI Mobley's] work' except
>
> .      .      .
>
> (2)  Work that has not yet been completed or abandoned.
>
> 11.b  '[SSI Mobley's] work' will be deemed completed at the earliest of the following times:
>
>> (1)  When all of the work called for in [SSI Mobley's] contract has been completed.

(2)     When all of the work to be done at the site has been completed if [SSI Mobley's] contract calls for work at more than one site.

(3)     When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or sub-contractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

We begin with the premise that the policy covers bodily injuries. The "products-completed operations hazard" endorsement provides an exclusion from that coverage. The exclusion bars coverage that arises out of SSI Mobley's work or product, and occurs away from SSI Mobley's premises. According to the petitions, the underlying bodily injuries occurred at a BNSF crossing, away from SSI Mobley's premises, and SSI Mobley's negligent weed control operations contributed to the collision. Therefore, pursuant to paragraph "a" the facts before us fall within the exclusion. The controlling issue is whether SSI Mobley's work at the crossing was completed at the time of the collision. The point of contention is how to characterize the language in paragraphs "a(2)" and "b" of the exclusion. BNSF characterizes these provisions as additional elements of the exclusion, and argues it was National Union's burden to establish that SSI Mobley's work was complete at the time of the collision in order to demonstrate that the exclusion applies. In response, National Union characterizes the provisions as exceptions to the exclusion and concludes it was BNSF's burden to demonstrate that SSI Mobley's work at the crossing was not complete. To settle this dispute, we again turn to principles of contract interpretation.

-12-

As in our discussion of the "additional insured" provision above, we are faced with an unambiguous contract provision and must construe the definition of this exclusion according to the plain meaning of the words chosen by the parties. *See Archon Investments, Inc.*, 174 S.W.3d at 338. In this instance, the presence of the word "*except*" following the primary definition of the exclusion is determinative. The first clause in paragraph "a." provides the requirements for the exclusion. The exclusion applies to bodily and property injuries: (1) that occur away from SSI Mobley's premises; and (2) that arise out of SSI Mobley's work or product. *See Houston Building Serv., Inc. v. Am Gen. Fire & Cas. Co.*, 799 S.W.2d 308, 309-10 (Tex.App.--Houston [1st Dist.] 1990, writ denied)(noting an identical products - completed operations hazard definition contained two elements: (1) damage arising out of the insured's work; and (2) damage occurring on premises the insured does not own or lease).

The definition then provides an exception to the exclusion which brings a case back within the policy's coverage if SSI Mobley's work "has not yet been completed or abandoned." Had the parties intended to make proof that the named insured's work was completed as an element of the exclusion, they could have done so. Instead, the provision is worded as an exception to the exclusion. Therefore, in response to the products - completed operations hazard exclusion, it was BNSF's burden to establish SSI Mobley's work was "not complete" at the time of the collision. *See Atl. Mut. Ins. Co.*, 107 S.W.3d at 733 (once the insurer establishes the application of a policy exclusion, the burden shifts back to the insured to demonstrate an exception to the exclusion). In determining whether BNSF met its burden, we again note that we are prohibited from considering extrinsic evidence. *See Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 653-56 (Tex. 2009).

To determine whether SSI Mobley's work was "not completed" at the time of the collision, we look to sub-paragraph (2). In sub-paragraph (2), we find three definitions of "completed." First, SSI Mobley's work is completed when all of the work called for in its contract with the railroad is complete. The second definition provides that work is completed on a site by site basis, regardless of the status of the work at other locations. Third, work is completed when the site has been put to its intended use. The policy further specifies that the need for ongoing maintenance or service does not prevent the work from being completed for the purposes of the exclusion. The definition providing the earliest date for completion controls.

Again, we turn to the allegations in the Lara's and Rosales's petitions. *See Pine Oak Builders, Inc.*, 279 S.W.3d at 653-54. Previously, we held that because the factual allegations regarding SSI Mobley's work at the site of the collision were written in the past tense, the completed operations exclusion precluded a duty to defend.[3] However, use of the past tense in drafting allegations for a petition is not particularly unusual given that a petition is rarely, if ever, drafted contemporaneously with the events described in the petition. As such, use of the past tense in this circumstance cannot be determinative.

The first "work completed" definition makes the completion date dependent on the length of SSI Mobley's contract. The other two definitions would also require us to refer to the contract between BNSF and SSI Mobley. Given that we are not permitted to refer to extrinsic evidence in determining the duty to defend, we have no way of knowing the length of SSI Mobley's contract. *See Pine Oak Builders, Inc., 279 S.W.3d at 654.* In light of that restriction,

---

[3] The allegations refer to SSI Mobley having *failed* to use reasonable care in its work, and that because of its improper timing and application of chemical weed control, excessive vegetation *was* permitted to grow. The petitions further allege that there *was* excessive vegetation at the crossing. All of the allegations related to SSI Mobley's work at the site indicate the company sprayed prior to the collision.

we do not know whether work was completed on a site by site basis, regardless of the status of the work at other locations or whether work was completed when the site was put to its intended use.

However, we are to interpret the allegations in the petition liberally and resolve any doubts in favor of the duty to defend. *KLN Steel Prod. Co., Ltd.,* 278 S.W.3d at 435. BNSF need only demonstrate that a reasonable reading of the allegations would permit evidence of a claim that is potentially covered by the policy, and not that the claim itself is clearly demonstrated by the language of the petition. *National Union Fire Insurance Co.,* 939 S.W.3d at 141. All that is needed to invoke the duty are factual allegations that support a claim potentially covered by the policy. *See GuideOne Elite Ins. Co.,* 197 S.W.3d at 310.

The Lara's and Rosales's petitions allege that BNSF had a contract with SSI Mobley at the time of the collision and that the contract was for chemical weed control. They allege that SSI Mobley failed to use reasonable care to carry out its chemical weed control, and that the improper timing and application of chemical weed control was such that excessive vegetation existed at the site at the time of the collision proximately causing the collision.[4] A reasonable reading of these and the other allegations in the petitions, and liberally interpreting them as we are required to do, would permit evidence of a claim that is potentially covered by the policy. *See Adamo,* 853 S.W.2d at 676 ("It is not the cause of action alleged which determines coverage but the *facts* giving rise to the alleged actionable conduct.")[Emphasis in orig.]. In other words, BNSF met its burden to establish an exception to the exclusion. *See Pine Oak Builders, Inc.,* 279 S.W.3d at 653-56.

---

[4] Essentially, the Lara and Rosales families alleged that the application of chemical weed control by SSI Mobley was insufficient or not properly completed such that excessive vegetation at the site at the time of the collision was a

Given that BNSF met the requirements to qualify as an additional insured under the policy and inasmuch as National Union's coverage exclusion does not apply, we conclude that National Union owed a duty to defend. Accordingly, the trial court erred by granting summary judgment on this issue.

Next, BNSF contends the trial court erred by granting National Union's traditional and no-evidence motion for summary judgment on the insurer's duty to indemnify.

The duty to indemnify is separate and distinct from the duty to defend. *See Utica Nat'l Ins. Co. of Texas v. Am. Indem. Co.,* 141 S.W.3d 198, 203 (Tex. 2004). One duty may exist without the other. *Farmers Texas County Mutual Ins. Co. v. Griffin,* 955 S.W.2d 81, 82 (Tex. 1997). To that extent, the duties enjoy a degree of independence. *See Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 821-22 (Tex. 1997). While the duty to defend is limited by the "eight corners doctrine," the duty to indemnify is under no such restriction and is dependent on the facts established in the underlying suit. *Pine Oak Builders, Inc.,* 279 S.W.3d at 656. The insurer's duty to indemnify depends on the facts proven and whether the damages caused by the actions or omissions proven are covered by the terms of the policy. *D.R. Horton – Texas, Ltd. v. Markel International Insurance Co., Ltd.,* 300 S.W.3d 740, 744 (Tex. 2009). In other words, a reviewing court is obligated to consider evidence extrinsic to the pleadings and the insurance policy in determining whether an insurer owes a duty to indemnify. *Id.; see also Burlington Northern and Santa Fe Railway Co.,* 334 S.W.3d at 220.

In its motions for summary judgment, National Union essentially argued that: (1) SSI Mobley's contractual scope of work did not extend to the vegetation; (2) SSI Mobley was not

proximate cause of the collision.

working at the railroad crossing at issue when the accident occurred; (3) neither the CGL nor the umbrella policy provide coverage for the bodily injuries at issue in this case inasmuch as the policies exclude coverage for bodily injuries that occur away from SSI Mobley's premises and arise out of SSI Mobley's work unless SSI Mobley's work was not completed; (4) BNSF did not settle losses covered by the policies; and (5) BNSF's own negligent acts were the sole source of its settlement liabilities.   In other words, to defeat National Union's motions for summary judgment on the issue of indemnity, BNSF was obligated to present evidence that BNSF qualified as an additional insured under the policy and that SSI Mobley's work was not complete at the time of the accident.   We have already determined that BNSF was an additional insured under the policies.   The only question then is whether SSI Mobley's work at the accident site was complete at the time the accident occurred.

We are obligated to take all evidence favorable to BNSF, the non-movant, as true, and all reasonable inferences, including any doubts, must be resolved in BNSF's favor.   *See Nixon*, 690 S.W.2d at 548-49.   However, where the trial court's summary judgment order does not state the basis for its decision, we must uphold the order if any of the theories advanced in the motion are meritorious.   *Provident Life & Accident Ins. Co. v. Knott*, 128 S .W.3d 211, 216 (Tex. 2003).

BNSF and/or National Union presented evidence that showed:   (1) SSI Mobley's CGL Contractual Liability policies named BNSF as an additional insured; (2) the policies provided coverage for incidents occurring within 50 feet of a railroad track; (3) SSI Mobley had a vegetation control contract with BNSF covering the years 1994 – 1996 and the contract had not expired or terminated at the time of the accident; (4) SSI Mobley was obligated under the terms of the contract to perform vegetation control so as to meet the satisfaction of BNSF's chief

-17-

engineer; (5) SSI Mobley's contract with BNSF called for SSI Mobley to control vegetation for 30 feet on each side of the centerline of the railroad track; (6) SSI Mobley anticipated, expected, and compensated for a "drift" of between two and twelve feet of the herbicide it sprayed as a result of the spraying itself and/or other factors; and (7) the vegetation at issue was located some 35-40 feet from the centerline of the railroad track, according to BNSF's accident investigator.

This evidence raises fact questions that defeat National Union's traditional motion for summary judgment on the duty to indemnify claim. Because BNSF has raised a genuine issue of material fact sufficient to defeat National Union's traditional motion for summary judgment, we need not address National Union's no-evidence motion for summary judgment. Accordingly, we find that the trial court erred by granting National Union's motion for summary judgment as to BNSF's indemnity claim.

In light of the foregoing, we reverse the judgment of the trial court on the duty to defend and the duty to indemnify, and remand the case to the trial court for proceedings consistent with this opinion.

August 29, 2012

CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.