# Supreme Court of Texas

No. 21-0232

Monroe Guaranty Insurance Company, a Member of the FCCI Insurance Group,

*Appellant*,

v.

BITCO General Insurance Corporation, formerly known as Bituminous Casualty Corporation,

*Appellee*

On Certified Questions from the
United States Court of Appeals for the Fifth Circuit

**Argued September 14, 2021**

JUSTICE HUDDLE delivered the opinion of the Court.

This insurance coverage dispute presents two certified questions from the United States Court of Appeals for the Fifth Circuit. The ultimate issue in the case is whether Monroe Guaranty Insurance Company owed its insured a duty to defend a suit in which the plaintiff alleged that the insured negligently drilled an irrigation well, damaging the plaintiff's land. The certified questions relate to a subsidiary issue: whether Texas law permits consideration of stipulated extrinsic

evidence to determine whether the duty to defend exists when the plaintiff's pleading is silent about a potentially dispositive coverage fact.

The Fifth Circuit asks, first, whether the *Northfield* exception to the "eight-corners rule" is permissible under Texas law. *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523 (5th Cir. 2004). Some Texas appellate courts and some federal courts applying Texas law, relying on *Northfield* or a similar test, consider extrinsic evidence bearing solely on coverage facts when the eight-corners analysis, due to gaps in the plaintiff's pleading, is not determinative of whether coverage exists. We hold this practice is permissible under Texas law provided the extrinsic evidence (1) goes solely to the issue of coverage and does not overlap with the merits of liability, (2) does not contradict facts alleged in the pleading, and (3) conclusively establishes the coverage fact to be proved.

The second certified question asks whether the date of an occurrence is a type of extrinsic evidence that may be considered when these requirements are satisfied. Because we do not adhere to *Northfield*'s requirement that extrinsic evidence may be considered only to determine "fundamental" coverage issues, we answer "yes" but conclude that the stipulation offered in this case may not be considered because it overlaps with the merits of liability.

## I.    Background

The parties to this dispute are two liability insurers. Each provided commercial general liability (CGL) coverage to the insured, 5D Drilling & Pump Service, Inc., albeit at different times. BITCO General Insurance Corporation provided two consecutive one-year CGL policies

2

covering October 2013 to October 2015. Monroe's CGL policy covered 5D from October 2015 to October 2016.

David Jones d/b/a J & B Farms of Texas sued 5D in Bexar County district court in 2016 for breach of contract and negligence, seeking damages allegedly resulting from 5D's drilling operations on Jones's property. According to Jones's petition, he contracted with 5D in the summer of 2014 to drill a 3600-foot commercial irrigation well on his farmland.

Jones's pleading does not detail when 5D's purportedly negligent acts occurred or even when 5D began or stopped the work. But it does allege 5D was negligent in various respects:

- 5D drilled the well in a way that "deviates in an unacceptable fashion from vertical";

- 5D "'stuck' the drilling bit in the bore hole, rendering the well practically useless for its intended/contracted for purpose";

- 5D "failed and refused to plug the well, retrieve the drill bit, and drill a new well"; and

- 5D "failed to case the well through the Del Rio clay, allowing detritus to slough off the clay, falling down the bore and filling up the well."

Similarly, the pleading alleges *that* Jones's land was damaged in different ways but is silent as to *when* any of the alleged damage occurred. It alleges that 5D "damaged [Jones's] property by lodging a drill bit and part of a bottom hole assembly in the aquifer under [his] property, damaging the aquifer and damaging the free flow of water in the aquifer." And while the petition makes clear that 5D's failure to case the well allowed detritus to fall down it, the petition does not say when this occurred or when 5D or Jones learned about it.

3

5D demanded a defense from both insurers. BITCO defended under a reservation of rights, but Monroe refused to defend, contending that any property damage occurred before its policy period began. Monroe acknowledges that its policy requires it to "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." It also acknowledges a duty to defend under the policy: Monroe "will have the right and duty to defend the insured against any 'suit' seeking those damages." But, as Monroe points out, the policy limits the scope of the duty to defend to cover property damage only if it "occurs during the policy period." It also provides that Monroe will have *no* duty to defend 5D against any suit "to which this insurance does not apply." There is a further limitation: coverage applies only if, "[p]rior to the policy period, no insured . . . knew that the . . . 'property damage' had occurred, in whole or in part." Thus, if 5D "knew, prior to the policy period, that the . . . 'property damage' occurred, then any continuation, change or resumption of such . . . 'property damage' during or after the policy period will be deemed to have been known prior to the policy period."

BITCO sued Monroe in federal district court, seeking a declaration that Monroe owed a defense to 5D.[1] BITCO and Monroe stipulated that 5D's drill bit stuck in the bore hole during 5D's drilling "in or around November 2014," or about ten months before BITCO's policy would end and Monroe's would begin. Both parties sought

---

[1] BITCO paid to settle the underlying lawsuit and does not seek contribution from Monroe for the settlement. BITCO seeks contribution from Monroe only for defense costs incurred in the underlying suit.

4

summary judgment on the issue of whether Monroe owed a duty to defend. Monroe argued it had none because the stipulation proved that property damage occurred during BITCO's policy period and, therefore, Monroe's policy deemed all property damage to have been known during BITCO's policy period, long before Monroe's policy became effective in October 2015.

The district court determined it could not consider the stipulated extrinsic evidence of when 5D's drill bit stuck. It applied the eight-corners rule and concluded Monroe owed a duty to defend because the property damage could have occurred anytime between the formation of the drilling contract in 2014 and the filing of Jones's lawsuit in 2016 (during either or both insurers' policy periods).

Monroe appealed. The Fifth Circuit concluded that the question whether the court could consider extrinsic evidence—"the stipulated date the drill bit became stuck"—was "[k]ey to deciding this case." 846 F. App'x 248, 248 (5th Cir. 2021). It noted the answer to the question was an important and determinative question of Texas law as to which there is no controlling Texas Supreme Court precedent, *id.*, and certified two questions to us:

1. Is the exception to the eight-corners rule articulated in *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523 (5th Cir. 2004), permissible under Texas law?

5

2. When applying such an exception, may a court consider extrinsic evidence of the date of an occurrence when (1) it is initially impossible to discern whether a duty to defend potentially exists from the eight-corners of the policy and pleadings alone; (2) the date goes solely to the issue of coverage and does not overlap with the merits of liability; and (3) the date does not engage the truth or falsity of any facts alleged in the third party pleadings?

## II.   Discussion

### A. Answer to the First Certified Question: Texas law permits consideration of extrinsic evidence under a standard similar to that articulated in *Northfield.*

Insurance policies are interpreted under the rules of construction that apply to contracts in general. *Richards v. State Farm Lloyds*, 597 S.W.3d 492, 497 (Tex. 2020). The primary goal of contract construction is to effectuate the parties' intent as expressed in the contract. *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008).

Our Court adopted the eight-corners rule more than fifty years ago. *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 24 (Tex. 1965). The rule directs Texas courts to determine an insurer's duty to defend its insured based on (1) the pleadings against the insured and (2) the terms of the insurance policy. *Loya Ins. Co. v. Avalos*, 610 S.W.3d 878, 879 (Tex. 2020). Under the eight-corners rule, the insurer's duty to defend is determined by comparing the allegations in the plaintiff's petition to the policy provisions, without regard to the truth or falsity of those allegations and without reference to facts otherwise known or ultimately proven. *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006). The rule's name derives from the fact that only two documents are ordinarily relevant to the

6

determination of the duty to defend: the policy and the plaintiff's pleading. *Id.* Extrinsic evidence or facts outside the pleadings are generally not considered. *Id.*[2]

As we explained in *Richards*, the eight-corners rule is not a judicial amendment to an insurance policy. 597 S.W.3d at 499–500. It does not arise merely from the courts' say-so but is designed to enforce the parties' agreement as set forth in the policy. *Id.* The eight-corners rule merely acknowledges that, under many common duty-to-defend clauses, only the petition and the policy are relevant to the initial inquiry into whether the petition's claim fits within the policy's coverage. *Id.* at 500.

While the eight-corners rule is a settled feature of Texas law, *id.* at 499, it is not absolute. We recently adopted an exception: courts may consider extrinsic evidence that the insured and a third party suing the insured colluded to make false representations of fact to secure a defense and create coverage where it would not otherwise exist. *Avalos*, 610 S.W.3d at 879. *Avalos* reasons that an insurer does not agree to undertake, and the insured has not paid for, a duty to defend the insured against fraudulent allegations brought about by the insured itself. *Id.* at 882. And because the purpose of the eight-corners rule is to enforce and not rewrite the parties' agreement, it does not bar consideration of extrinsic evidence of collusion to establish the absence of a duty to

---

[2] In contrast, whether a liability insurer owes a duty to indemnify its insured is determined based on the facts actually established in the underlying suit. *Burlington N. & Santa Fe Ry. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 334 S.W.3d 217, 219 (Tex. 2011). Here, the duty to indemnify is not at issue.

defend. *Id*. Allowing such proof advances our primary goal of effectuating the written agreement.

Yet even before *Avalos*, the goal of effectuating the terms of the policy led some courts to consider extrinsic evidence in determining whether a duty to defend exists. *Richards*, 597 S.W.3d at 500 (noting some courts allow extrinsic evidence on coverage issues that do not overlap with the merits where "the petition states a claim that could trigger the duty to defend, but the petition is silent on facts necessary to determine coverage"). At least two Texas courts of appeals adopted the practice shortly after *Heyden Newport*.[3] And, following the later decision in *State Farm Fire & Casualty Co. v. Wade*,[4] the practice expanded among federal courts in the Fifth Circuit.[5] In general, these courts reasoned that when the underlying pleading states a claim that

---

[3] *See Cook v. Ohio Cas. Ins. Co.*, 418 S.W.2d 712, 715–16 (Tex. App.—Texarkana 1967, no writ) (considering extrinsic evidence that the car involved in an accident was owned by the insured's mother to determine that an exclusion barred coverage); *Int'l Serv. Ins. Co. v. Boll*, 392 S.W.2d 158, 160–61 (Tex. App.—Houston 1965, writ ref'd n.r.e.) (considering extrinsic evidence regarding the identity of the defendant driver to determine that the driver was not covered).

[4] 827 S.W.2d 448, 453 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied) (allowing court to consider extrinsic evidence regarding how a boat was being used to determine whether a business-pursuit exclusion barred coverage).

[5] *See John Deere Ins. Co. v. Truckin' U.S.A.*, 122 F.3d 270, 272–73 (5th Cir. 1997) (considering extrinsic evidence regarding the ownership of the truck involved in an accident to determine the truck was not a covered auto); *W. Heritage Ins. Co. v. River Ent.*, 998 F.2d 311, 314–15 (5th Cir. 1993) (considering extrinsic evidence that alcohol consumption caused the insured's customer to become impaired to determine that a liquor-liability exclusion barred coverage).

could trigger the duty to defend but is silent on a coverage-determinative fact, extrinsic evidence should be considered to fill the informational gap and determine whether the policy gives rise to a duty to defend.[6]

But the principles governing when (and what) extrinsic evidence could be considered have not been uniform. One federal district court observed:

> Texas intermediate courts of appeal do not agree on the breadth of extrinsic evidence that can be properly interjected into the duty to defend analysis. Add to that the many federal district courts and Fifth Circuit opinions relying on these disparate state cases, and one faces a cacophonous set of rulings indeed.

*Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P.*, 267 F. Supp. 2d 601, 614 (E.D. Tex. 2003).

The Fifth Circuit articulated a detailed standard in *Northfield*. 363 F.3d at 531. There, the insured provided in-home nannies and was sued when a child died while in an employee's care. *Id.* at 525. The insurer argued there was no coverage based on policy exclusions for criminal acts and physical abuse, but the underlying petition had been amended to remove allegations of criminal or intentional conduct. *Id.* at 526. The court ultimately refused to consider extrinsic evidence of the nanny's criminal conviction based on its *Erie* guess that our Court would not recognize any exception to the eight-corners rule. *Id.* at 531, 535. But the Fifth Circuit also opined that if this Court were to recognize an exception to the eight-corners rule, it would apply only

---

[6] *See, e.g.*, *Boll*, 392 S.W.2d at 160 (noting that the plaintiff's petition did not identify the driver by name, but the parties stipulated that it was the insured's only son, who was expressly excluded from coverage).

9

"when it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." *Id*. at 531.

This Court, citing *Northfield*, acknowledged this "narrow exception" to the eight-corners rule in *GuideOne*. *See* 197 S.W.3d at 308–09. *GuideOne* did not expressly adopt the *Northfield* test, but neither did it reject it. Instead, we held the proffered extrinsic evidence could not be considered because it contradicted a fact alleged in the pleading. *Id*. at 310 (noting that the proffered extrinsic evidence contradicted an allegation regarding the defendant's dates of employment); *see also id*. at 311 (rejecting an invitation by amicus to adopt a "true-facts" exception to the eight-corners rule). We rejected the use of extrinsic evidence that contradicts the pleadings again a few years later. *See Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 655 (Tex. 2009) ("In deciding the duty to defend, the court should not consider extrinsic evidence from either the insurer or the insured that contradicts the allegations of the underlying petition.").

The Fifth Circuit revisited the subject a few years after *GuideOne* and determined that, despite its prior *Erie* guess, this Court would permit consideration of extrinsic evidence under *Northfield*'s parameters. *See Ooida Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469, 475–76 (5th Cir. 2009) (considering extrinsic evidence of whether individual was an employee of the insured). Our courts of appeals

10

remain divided on the issue. Some reject extrinsic evidence altogether.[7]

But other courts of appeals[8] and federal courts[9] have continued to

[7] *See AIX Specialty Ins. Co. v. Shiwach*, No. 05-18-01050-CV, 2019 WL 6888515, at \*7 (Tex. App.—Dallas Dec. 18, 2019, pet. denied) ("Although the Fifth Circuit and multiple intermediate appellate courts have expressly recognized a limited exception to [the eight-corners] rule . . . , the Texas Supreme Court and this Court have not yet done so."); *Burlington N. & Santa Fe Ry. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 394 S.W.3d 228, 236–38 (Tex. App.—El Paso 2012, pet. denied) (refusing to consider extrinsic evidence about whether a subcontractor's work met the policy's definition of "completed," which would exclude the claim from coverage, because "we are not permitted to refer to extrinsic evidence in determining the duty to defend").

[8] *See Tex. Pol. Subdivs. Prop./Cas. Joint Self Ins. Fund v. Pharr-San Juan-Alamo ISD*, 628 S.W.3d 486, 494 (Tex. App.—Corpus Christi–Edinburg 2019) (holding that "extrinsic evidence is admissible 'when doing so does not question the truth or falsity of any facts alleged in the underlying petition'" (quoting *Wade*, 827 S.W.2d at 453)), *aff'd on other grounds*, ___ S.W.3d ___ (Tex. Feb. 11, 2022); *Weingarten Realty Mgmt. Co. v. Liberty Mut. Fire Ins. Co.*, 343 S.W.3d 859, 865 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (adopting an exception to the eight-corners rule that is limited to extrinsic evidence that (1) shows the party seeking coverage is a stranger to the policy and (2) goes strictly to an issue of coverage without contradicting any allegation that is material to the merits of the underlying claim).

[9] *See, e.g.*, *Star-Tex Res., L.L.C. v. Granite State Ins. Co.*, 553 F. App'x 366, 372–73 (5th Cir. 2014) (considering extrinsic evidence that the insured's employee was operating the car that caused the plaintiff's injuries and concluding an auto-exclusion exception barred coverage); *Nabors Drilling Techs. USA Inc. v. Deepwell Energy Servs. LLC*, ___ F. Supp. 3d ___, 2021 WL 4924758, at \*15–16 (S.D. Tex. Oct. 21, 2021) (considering extrinsic evidence regarding the terms of a master service agreement to determine whether that agreement was an "insured contract" as defined under the policy); *Hallmark Cnty. Mut. Ins. Co. v. Ace Am. Ins. Co.*, 283 F. Supp. 3d 559, 567–68 (W.D. Tex. 2017) (considering extrinsic evidence regarding the length of a lease agreement to determine that an automobile was not a covered auto under a policy endorsement); *Sentry Select Ins. Co. v. Home State Cnty. Mut. Ins. Co.*, 994 F. Supp. 2d 789, 810 (E.D. Tex. 2013) (considering extrinsic evidence about the purpose for which the insured had given permission for an employee to drive the insured's car to determine whether the driver was an employee or a

consider extrinsic evidence under *Northfield* or similarly worded standards.

Today, we expressly approve the practice of considering extrinsic evidence in duty-to-defend cases to which *Avalos* does not apply. In doing so, we do not abandon the eight-corners rule. It remains the initial inquiry to be used to determine whether a duty to defend exists, *Richards*, 597 S.W.3d at 500, and it will resolve coverage determinations in most cases. But if the underlying petition states a claim that could trigger the duty to defend, and the application of the eight-corners rule, due to a gap in the plaintiff's pleading, is not determinative of whether coverage exists, Texas law permits consideration of extrinsic evidence provided the evidence (1) goes solely to an issue of coverage and does not overlap with the merits of liability, (2) does not contradict facts alleged in the pleading, and (3) conclusively establishes the coverage fact to be proved.

This standard coheres with *Northfield*, with minor refinements. First, *Northfield* states that extrinsic evidence may be considered only if it is initially impossible to discern from the pleadings and policy "whether coverage is *potentially* implicated." 363 F.3d at 531 (emphasis added). We think this standard invites courts to do what our authorities prohibit: "read facts into the pleadings" or "imagine factual scenarios which might trigger coverage." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex. 1997).

---

customer under the policy); *Millis Dev. & Constr., Inc. v. Am. First Lloyd's Ins. Co.*, 809 F. Supp. 2d 616, 631 (S.D. Tex. 2011) (allowing extrinsic evidence regarding the timing of various subcontracts to determine when a worker would have been covered as an additional insured).

The better threshold inquiry, reflected in more recent authorities, is: does the pleading contain the facts necessary to resolve the question of whether the claim is covered? *See Ooida*, 579 F.3d at 476 ("Because the pleadings do not contain the facts necessary to resolve the question, we hold that the exception employed by *Northfield* applies and that extrinsic evidence can be considered."); *Richards*, 597 S.W.3d at 500 (noting extrinsic evidence is considered by courts where "the petition states a claim that could trigger the duty to defend, but the petition is silent on facts necessary to determine coverage").

The second refinement relates to the types of extrinsic evidence that may be considered. *Northfield* required that the extrinsic evidence go to a "fundamental" coverage issue: (1) whether the person sued has been excluded by name or description from any coverage, (2) whether the property in suit is included in or has been expressly excluded from any coverage, and (3) whether the policy exists. 363 F.3d at 530 (citing *Westport*, 267 F. Supp. 2d at 621).[10]

---

[10] The limitation to "fundamental" coverage issues seemingly originated in *Tri-Coastal Contractors, Inc. v. Hartford Underwriters Insurance Co.*, 981 S.W.2d 861 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). In rejecting the trial court's consideration of extrinsic evidence in that case, the court stated:

> In Texas, extrinsic evidence is permitted to show no duty to defend only in very limited circumstances, for example where the evidence is used to disprove the fundamentals of insurance coverage, such as whether the person sued is excluded from the policy, whether a policy contract exists, or whether the property in question is insured under the policy.

*Id.* at 863 n.1 (citing *Cook*, 418 S.W.2d at 715–16; *Boll*, 392 S.W.2d at 161). But neither *Cook* nor *Boll* limited its holding to any particular type of coverage issue, and *Wade* and cases following it likewise contain no such limitation. *See,*

BITCO argues that, if consideration of any extrinsic evidence is allowed, it should be limited accordingly. Monroe responds that *Northfield*'s list is not exhaustive and that other issues, including the date on which property damage occurred, are also fundamental to determining coverage. Several courts, including those applying the *Northfield* exception, have considered extrinsic evidence bearing on facts that may not qualify as "fundamental" under *Northfield*.[11] This is unsurprising, as the rationale for considering extrinsic evidence is sound regardless of whether the coverage issue in dispute meets *Northfield*'s "fundamental" qualifier. Rather than task courts with determining which coverage issues are—or are not—fundamental, we think the better approach is to eliminate this requirement altogether.

Third, unlike *Northfield*, Texas law requires that the proffered extrinsic evidence must conclusively establish the coverage fact at issue.

*e.g.*, *W. Heritage Ins. Co.*, 998 F.2d at 314–15 (following *Wade* and concluding that extrinsic evidence to determine why an insured's customer was impaired could be considered to determine if a liquor-liability exclusion barred coverage).

[11] *See Nat'l Liab. & Fire Ins. Co. v. Los Chavez Autobuses Inc.*, No. 4:20-CV-01302, 2021 WL 920138, at *4 (S.D. Tex. Mar. 10, 2021) (concluding that extrinsic evidence regarding the location of an auto accident, to determine whether the accident occurred within the policy's coverage territory, goes to a fundamental issue of coverage); *Hudson Ins. Co. v. Alamo Crude Oil, LLC*, No. SA-19-CV-137-XR, 2019 WL 3322867, at *5–6 (W.D. Tex. July 24, 2019) (concluding that extrinsic evidence that a truck driver was hauling a load for a customer at the time of the accident, to determine whether coverage was barred by a business-use exclusion, goes to a fundamental issue of coverage); *Evanston Ins. Co. v. Kinsale Ins. Co.*, No. 7:17-CV-327, 2018 WL 4103031, at *10–11 (S.D. Tex. July 12, 2018) (concluding that extrinsic evidence regarding dates the insured's construction projects were completed, to determine that the alleged property damage occurred before the inception of the policy, goes to a fundamental issue of coverage).

14

The coverage fact need not be the subject of a stipulation. Other forms of proof may suffice. But extrinsic evidence may not be considered if there would remain a genuine issue of material fact as to the coverage fact to be proved. *See Avalos*, 610 S.W.3d at 879 (requiring conclusive proof of collusive fraud to show no duty to defend); *Heyden Newport*, 387 S.W.2d at 26 (when ultimately deciding whether an insurer owes a duty to defend, doubts should be resolved in the insured's favor).

To sum up, the eight-corners rule remains the initial inquiry to be used to determine whether a duty to defend exists. But if the underlying petition states a claim that could trigger the duty to defend, and the application of the eight-corners rule, due to a gap in the plaintiff's pleading, is not determinative of whether coverage exists, Texas law permits consideration of extrinsic evidence provided the evidence (1) goes solely to an issue of coverage and does not overlap with the merits of liability, (2) does not contradict facts alleged in the pleading, and (3) conclusively establishes the coverage fact to be proved. The consideration of extrinsic evidence under these standards advances our dual goals of effectuating the parties' agreement as written, while protecting the insured's interests in defending against the third party's claims. A contrary rule that ignores conclusively proven facts showing the absence of coverage would create a windfall for the insured, requiring coverage for which the insured neither bargained nor paid. Such a windfall would come at the expense of all consumers of insurance,

15

who ultimately shoulder the expense of the insurer's increased defense costs through higher premiums.[12]

### B. Answer to the Second Certified Question: Under the standard we adopt today, a court may consider extrinsic evidence of the date of an occurrence.

The second certified question asks whether, when applying such an exception, a court may consider extrinsic evidence of the date of an occurrence. As discussed above, courts considering extrinsic evidence have not limited the practice to circumstances in which the coverage question is one of those identified as "fundamental" by *Northfield*. Like those courts, we see no sound reason to limit consideration of extrinsic evidence in that manner. Because we do not categorically limit the types of potentially coverage-determinative facts that may be proven by extrinsic evidence, evidence of the date of an occurrence may be considered if it meets the other requirements described above.

Here, however, the extrinsic evidence does not pass the test. As *GuideOne* made clear and we have explained above, extrinsic evidence may be considered only if it goes solely to the issue of coverage and does not overlap with the merits of liability. 197 S.W.3d at 309 (rejecting use of extrinsic evidence that overlaps with the merits because it "poses a significant risk of undermining the insured's ability to defend itself in the underlying litigation"). In cases of continuing damage like the kind alleged here, evidence of the date of property damage overlaps with the

---

[12] As always, parties dissatisfied with the common-law rule we adopt today remain free to provide, by contract, for additional or different rules governing the scope of the duty to defend. *See Richards*, 597 S.W.3d at 497 ("As with any contract, the parties may displace default rules of construction by agreement.") (citing *Wenske v. Ealy*, 521 S.W.3d 791, 792, 796 (Tex. 2017)).

merits. A dispute as to *when* property damage occurs also implicates *whether* property damage occurred on that date, forcing the insured to confess damages at a particular date to invoke coverage, when its position may very well be that no damage was sustained at all.

The stipulation here proves that the drill bit got stuck in or around November 2014. Monroe argues this relieves it of a duty to defend because it demonstrates property damage occurred at that time, which was months before its policy took effect. Yet in the underlying case, the insured likely would have sought to prove the sticking of the drill bit was *not* the cause of any damage. And to obtain coverage in the face of Monroe's refusal, the insured would necessarily argue that some of plaintiff's alleged damages (e.g., the sloughing of material into the well) occurred *after* November 2014. This would undermine its liability defense, which is best served by asserting there was no damage either in November or anytime thereafter.

Because the use of the stipulation in the manner urged by Monroe would overlap with the merits of liability in these ways, it cannot be considered in determining whether Monroe owes a duty to defend.

\* \* \*

We answer the first certified question "yes," subject to our minor refinements to the so-called "*Northfield* exception." It remains true that in most cases, whether a duty to defend exists is determined under Texas's longstanding eight-corners rule. But if the underlying petition states a claim that could trigger the duty to defend, and the application of the eight-corners rule, due to a gap in the plaintiff's pleading, is not determinative of coverage, Texas law permits consideration of extrinsic

17

evidence provided the evidence (1) goes solely to an issue of coverage and does not overlap with the merits of liability, (2) does not contradict facts alleged in the pleading, and (3) conclusively establishes the coverage fact to be proved.

As for the second certified question, we conclude that, while there is no categorical prohibition against extrinsic evidence of the date of an occurrence, the stipulation in this case overlaps with the merits of liability and cannot be considered.

Rebeca A. Huddle
Justice

**OPINION DELIVERED:** February 11, 2022